689 So.2d 578 (1997)
Ethan MANVILLE, et al. Plaintiffs-Appellees,
v.
Milton CITIZEN, et al., Defendants-Appellants.
No. 96-861.
Court of Appeal of Louisiana, Third Circuit.
February 5, 1997.
*581 Stephen Douglas Baker, Lafayette, for Ethan Manville, et al.
William Fredrick Page Jr., Lafayette, for Milton Citizen, et al.
Before WOODARD, SULLIVAN and GREMILLION, JJ.
WOODARD, Judge.
Plaintiffs brought suit arising from an auto accident. A jury returned a verdict, finding 80 per cent fault on the part of the defendants and 20 per cent fault on the part of the plaintiffs, and awarded damages. Following the rendering of the jury's judgment, plaintiffs filed a Motion for Judgment Notwithstanding the Verdict, which was subsequently granted by the trial judge. The defendants appeal the trial judge's finding of 100 per cent liability on their part and the increase in the amount of damages awarded by the jury.

FACTS
This litigation arises out of an auto accident which occurred on September 3, 1993, at the intersection of U.S. Highway 190 and Louisiana Highway 367 in St. Landry Parish. Two vehicles were involved in the collision. One vehicle, a Ford pickup truck, was driven by Sherri Manville. The other vehicle, an 18-wheel tractor-trailer, was driven by Milton Citizen, during the course and scope of his employment for I.E. Miller of Eunice, Inc., who was insured by Homestead Insurance Company, the additional defendant. The collision occurred as Citizen, traveling north on Highway 367, was attempting to cross the intersection of Highway 190 and pulled out in front of Sherri's path. Sherri Manville, traveling east on Highway 190, struck the trailer head-on, impacting the trailer at the driver's side wheel area.
There were no passengers in Citizen's vehicle. There were several occupants in Sherri Manville's vehicle, including: Ethan Manville, her husband and owner of the pickup; Stephanie Manville, the daughter, who was 7 at the time of the accident; and Christopher, the son, who was 3. Sherri, Ethan and Stephanie sustained injuries. When the police arrived on the scene, Citizen was issued a citation for failing to yield at a stop sign. Citizen ultimately pleaded guilty to the offense and paid a fine of $71.00.
The matter was tried before a jury on January 22-23, 1996. The jury returned a verdict, finding 80 per cent fault on the part of Citizen and 20 per cent fault on the part of Sherri Manville for causing the accident. The following awards were given by the jury:

Stephanie Manville: $14,471.24 ($12,000.00 in general damages; $1,471.24 in unpaid medical expenses; $1,000.00 for future medical expenses).

Ethan Manville: $500.00 in general damages.

Sherri Manville: $12,892.00 ($10,000.00 in general damages and $2,892.00 in unpaid medical expenses).
Following the rendering of the jury's verdict, the plaintiffs filed a Motion for Judgment Notwithstanding the Jury's Verdict. In their Motion, the plaintiffs asked the trial judge to reverse the jury's finding of 20 per cent fault on the part of Sherri Manville and increase the damages awarded by the jury. The defendants filed a motion for a new trial, seeking to reverse the trial court's assessment of all costs to the defendants.
On February 9, 1996, a hearing was held on both motions. The trial court subsequently denied the defendants motion and granted the plaintiffs' motion. In doing so, the trial judge reassessed liability, imposing 100 percent fault on Citizen. In addition, the trial *582 judge increased the damage awards to all three plaintiffs, as follows:

Stephanie Manville, $48,471.24 (increased from $14,471.24);

Ethan Manville, $10,000.00 (increased from $500.00);

Sherri Manville, $21,392.00 (increased from $12,892.00).
It is from the trial court's judgment that the defendants now appeal.

ASSIGNMENTS OF ERROR
The defendants, Milton Citizen, I.E. Miller of Eunice and Homestead Insurance Company, claim the following assignments of error:
1) The trial court erred in granting a Motion for Judgment Notwithstanding the Verdict on the liability issue, therefore reversing the jury's assessment of 20 percent fault to Sherri Manville, plaintiff.
2) The trial court erred in granting a Motion for Judgment Notwithstanding the Verdict, increasing the damages awarded to Ethan Manville from $500.00 to $10,000.
3) The trial court erred in granting a Motion for Judgment Notwithstanding the Verdict, increasing the damages awarded to Sherri Manville from $12,892.00 to $21,392.00.
4) The trial court erred in granting a Motion for Judgment Notwithstanding the Verdict, increasing the damages awarded to Stephanie Manville from $14,471.24 to $48,471.24.
5) The trial court erred in awarding an excessive amount of damages to all plaintiffs.
6) The trial court erred in assessing 100 percent of court costs to all plaintiffs.
7) The trial court erred in granting the plaintiff's Motion in Limine prohibiting the defendants from arguing that the plaintiffs were guilty of fault for not wearing their seat belts, as the statute relied upon by the trial judge, Louisiana Revised Statute 32:295.1 E., is unconstitutional.

LAW
THE TRIAL COURT STANDARDS FOR GRANTING JUDGMENT NOTWITH STANDING THE VERDICT AND THE APPELLATE COURT STANDARD OF REVIEW
In Anderson v. New Orleans Public Serv. Inc., 583 So.2d 829, 831-32 (La. 1991), the Louisiana Supreme Court outlined the standard for granting a JNOV as well as the standard of appellate review thereof:
The article controlling the use of JNOV is LSA-C.C.P. Art. 1811. The article does not specify the grounds on which a trial judge may grant a JNOV. In Scott v. Hospital Service District No. 1, 496 So.2d 270 (La.1986), we set forth the criteria to be used in determining when a JNOV is proper. A JNOV is warranted when the facts and inferences point so strongly and overwhelmingly in favor of one party that the court believes that reasonable men could not arrive at a contrary verdict. The motion should be granted only when the evidence points so strongly in favor of the moving party that reasonable men could not reach different conclusions, not merely when there is a preponderance of evidence for the mover. If there is evidence opposed to the motion which is of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motion should be denied. Scott, supra. In making this determination, the court should not evaluate the credibility of the witnesses, and all reasonable inferences or factual questions should be resolved in favor of the non-moving party.
In reviewing a JNOV, the appellate court must first determine if the trial court erred in granting the JNOV. This is done by using the aforementioned criteria just as the trial judge does in deciding whether to grant the motion or not, i.e. do the facts and inferences point so strongly and overwhelmingly in favor of the moving party that reasonable men could not arrive at a contrary verdict? If the answer to that question is in the affirmative, then the trial judge was correct in granting the motion. If, however, reasonable men in the exercise of impartial judgment might reach a *583 different conclusion, then it was error to grant the motion and the jury verdict should be reinstated.
See also Perkins v. Guaranty Nat. Ins. Co., 95-229 (La.App. 3 Cir. 11/2/95); 667 So.2d 559.
Concerning defendants first assignment of error, that the trial court erred in granting the plaintiffs' motion for JNOV, as stated in Anderson, we must first determine whether the facts and inferences point so strongly in favor of the mover that reasonable men could not arrive at a contrary verdict. After a careful review of the record, we determine the answer to be in the affirmative. Thus, for the following reasons, this assignment of error lacks merit.
At trial, Mr. Citizen testified repeatedly regarding his inability to see the Manville pickup at any time prior to the impact and consistently stated that his view of the Manville pickup was blocked by his side-view mirror. In addition, Mr. Citizen pleaded guilty for his failure to yield at the stop sign and was required to pay a fine. There was no evidence presented to indicate that Ms. Manville could have maneuvered her vehicle to avoid this accident, nor is there evidence indicating that Ms. Manville was traveling in excess of the posted speed limit. On the contrary, all parties testified that the accident happened within a matter of 2-3 seconds. In addition, there was no dispute that the 18-wheel trailer was blocking the entire eastbound section of the highway. Further, the evidence presented shows that Ms. Manville attempted to do the only thing she could, slam on the breaks and try to steer her vehicle towards the median. The police officer investigating the scene testified to the presence of skid marks on the roadway that were approximately 50 feet in length, thereby corroborating Ms. Manville's testimony.
In Miller v. Coastal Corp., 93-1073 (La.App. 3 Cir. 4/6/94); 635 So.2d 607, 609, this Court held:
[A]ll motorists are under a duty to drive prudently, which includes a duty to keep a proper lookout, Paige v. Commercial Union Ins. Co., 512 So.2d 507 (La.App. 3d Cir.1987), and a driver has a duty to drive defensively from the time she witnesses negligent operation of another vehicle and the potential for resulting damage, Hebert v. Lefty's Moving Serv., 389 So.2d 855 (La.App. 4th Cir.1980). However, there is no evidence in the record that allows any inference that [the plaintiff] breached either of these two duties.
Based on the evidence presented at trial, the jury was clearly wrong in assessing any fault to Ms. Manville, as the record is devoid of any evidence of fault on her part. The facts point clearly and strongly in her favor, sufficient to warrant the granting of a JNOV. Further, after careful review of the record, we cannot say that the trial judge's determination that Ms. Manville was free from fault was erroneous. Therefore, this assignment of error lacks merit.

JNOV AND DAMAGES
La.Code Civ.P. art. 1811(F) provides:
The motion for a judgment notwithstanding the verdict may be granted on the issue of liability or on the issue of damages or on both issues.
If the trial court was correct in granting the JNOV as to the issue of liability or damages, appellate review of the trial court's subsequent damage awards is limited to the determination of whether they are manifestly erroneous. Perkins, 667 So.2d 559 (citing Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976)). In Anderson, the Supreme Court stated its reasons for the rule as follows:
The trial judge is in a better position to make a damage assessment than is an appellate court. The trial judge hears the testimony, views the evidence, and is able to evaluate the credibility of the witnesses. Once the jury verdict is set aside under the strict JNOV standards, the trial court is then the trier of fact. It should not be limited by the same constraints placed upon an appellate court reviewing a damage award. The trial judge should make an independent assessment of the damages and award a proper amount of compensation under the facts of the particular case.

*584 The appellate court, in determining whether the trial court erred in granting the JNOV as to quantum, once again uses the criteria set forth in Scott [v. Hospital Service District No. 1, 496 So.2d 270 (La. 1986)], i.e., could reasonable men in the exercise of impartial judgment differ as to the fact that the jury award was either abusively high or abusively low. If the answer is in the affirmative, then the trial court erred in granting the JNOV, and the jury's damage award should be reinstated. On the other hand, if the answer is in the negative, then the trial court properly granted the JNOV, and its damage award based on its independent assessment of the damages is the judgment of the trial court which is reviewed on appeal under the constraints of Coco [v. Winston Industries, Inc., 341 So.2d 332 (La.1976)].
Anderson, 583 So.2d at 834.
The defendants' second, third, fourth and fifth assignments of error all relate to the trial judge's modification of the damage awards upon granting the JNOV. The defendants contend that the trial judge erred in increasing the awards and that the final awards were excessive. As stated above, we review the trial judge's awards under the manifest error standard. A reviewing court should not set aside an award of quantum unless an analysis of the facts and circumstances reveals that the trial court abused its discretion in setting the award. Reck v. Stevens, 373 So.2d 498 (La.1979). After an exhaustive review of the record, we find the awards are supported by the evidence and are not an abuse of discretion.

Sherri Manville
At the time of the accident, Sherri Manville was in the most serious state. Paramedics were unable to obtain a reading of her blood pressure for approximately 35 minutes, a situation which the paramedics felt was critical and is indicative of shock. In addition, she suffered a severe blow to her chest wall when she struck the steering wheel. She sustained a contused abdominal wall and suffered extreme pain and medical complications for approximately one year following the accident. She had substantial scarring and numbness in her forearm and hand, which was diagnosed as thoracic outlet syndrome. Mrs. Manville was hospitalized for two days following the accident. The jury awarded Mrs. Manville $10,000.00 for pain and suffering. The trial court increased the award to $17,500.00, which we determine to be more than reasonable under the circumstances.
Additionally, the jury failed to award loss of consortium damages. As this court stated in Detraz v. Hartford Accident & Indem. Co., 94-708 (La.App. 3 Cir. 12/7/94); 647 So.2d 576, loss of consortium encompasses more than a general loss of overall happiness. It includes: love and affection, society and companionship, sexual relations, right to performance of material services, right of support, aid and assistance, and felicity. Both Mr. and Mrs. Manville testified regarding the changes to their family life as a result of the accident. In addition, Mrs. Manville testified regarding the negative effect that the accident had on her relationship with her daughter, Stephanie. Mrs. Manville discussed her inability to do things around the house and for the children. We find that ample evidence was presented to prove loss of consortium and the jury was in error for not awarding damages therefor. The trial judge's award of $1,000.00 is not even close to an abuse of discretion, based on the circumstances of this case.

Ethan Manville
As to Ethan Manville, the evidence showed that he suffered substantially as a result of the accident. First, his head went through the front windshield of the pickup upon impact. This resulted in a large tear to the skin of his forehead and multiple lacerations as a result of the broken glass. The injury to his forehead produced a permanent scar. The jury erred in not awarding any damages for scarring and disfigurement; therefore, the trial judge was correct in awarding $2,500.00 for the injury.
Also, Mr. Manville's chest hit the dashboard causing him to suffer from bruised ribs. The evidence shows that he suffered considerably for the month following *585 the accident and on and off for the following two months thereafter. The jury awarded $500.00 for pain and suffering. As the trial judge correctly noted, the mere fact that Ethan did not seek additional treatment after the accident does not justify the low award by the jury. The evidence presented indicated that Mr. Manville did not normally go to physicians, and he was informed at the hospital that it would take some time before his ribs would feel better. In addition, the testimony regarding the extent and duration of the pain endured by Mr. Manville was uncontroverted at trial. Therefore, the trial judge was not manifestly erroneous in awarding $5,000.00 for pain and suffering.
There was ample evidence presented to indicate that everyone in the family suffered loss of consortium regarding Mrs. Manville's injuries. Mr. Manville testified regarding the substantial changes that his family underwent in the few months following the accident. The relationship between Mr. and Mrs. Manville was particularly affected because of the extent of her pain and injuries and her inability to move freely without pain. Mr. Manville testified that, as a result of the accident and his wife's injuries, he had to assist in the household chores and provide for the children's needs. This proof of loss of consortium was uncontroverted at trial. Therefore, the jury erred in not awarding loss of consortium damages, and the trial judge was correct in awarding Mr. Manville $2,500.00 in damages.

Stephanie Manville
Stephanie Manville, only 7 years old at the time of the accident, sustained numerous and serious injuries as a result of the collision. First, she sustained fractures of both the tibia and fibula. These injuries required surgery and casting for a total of seven weeks. Initially, Stephanie had to wear a full leg cast. During that time, her activity was extremely limited and she used a wheelchair and crutches to help her get around. Subsequently, her full cast was replaced with a smaller one that ended at the knee. Stephanie also suffered a severe injury to her right foot, causing her a physical and anatomical disability of 5 per cent. The injury prevents the child from wearing certain types of shoes. Further, it was established that up to a year following the accident, she was still complaining of pain in her foot.
The jury awarded $12,000.00 for pain and suffering. In closing arguments, the defense counsel requested that no more than $20,000.00 be awarded to Stephanie for her pain and suffering. The court increased the award to $40,000.00 for pain and suffering, as well as awarding $2,500.00 for disability. A review of cases in which the plaintiffs suffered similar injuries indicates that awards in larger amounts than those awarded in the case sub judice are the norm. See Briggs v. Hartford Ins. Co., 532 So.2d 1154 (La.1988); Sudduth v. DOTD, 619 So.2d 618 (La.App. 3 Cir.1993); Sledge v. Continental Casualty Co., 639 So.2d 805 (La.App. 2 Cir.1994); Burdis v. Lafourche Parish Police Jury, 618 So.2d 971 (La.App. 1 Cir.), writ denied, 620 So.2d 843 (La.1993). Therefore, the judge did not commit manifest error in increasing the award for pain and suffering.
Additionally, Stephanie suffered substantial lacerations to her face and an incomplete fracture of the mandible. These injuries caused a permanent scar to her face. Yet, as in the case of Ethan, the jury did not award any amount for scarring and disfigurement. Therefore, the trial judge was correct in awarding $2,000.00, based on the evidence presented at trial.
Again, the jury failed to make any award for loss of consortium. In the case of a minor child seeking loss of consortium damages, the elements are the same, except, of course, for the sexual component. Detraz, 647 So.2d 576. As stated above, both Mr. and Mrs. Manville testified as to the dramatic effects that the accident had on their family life. In addition, Mrs. Manville testified that following the accident, Stephanie had blamed her mother and that their relationship had cooled. Furthermore, Stephanie was clearly deprived of her mother's love and affection, as both Mrs. Manville and Stephanie were very restricted in their movements for the few months following the accident. Based on the ample evidence presented at *586 trial, the judge's award of $500.00 for loss of consortium does not even approach an abuse of discretion.
Lastly, the jury also failed to award any amount for future medical expenses. This relates in particular to the on-going treatment of Stephanie's foot. She will need continued monitoring to determine what path her treatment will take in the future. Until she reaches the age of twelve, not much can be done because the foot is still developing. As Dr. Cobb, her treating orthopaedist testified, the foot could get better or worse and may require surgery. Costs of surgery range from $1,758.00 to $7,000.00 depending on the length of hospitalization and anesthesia. Therefore, an award of $2,000.00 is not manifestly erroneous as it is well within the range of future medical expenses adduced at trial.
Accordingly, the trial judge's amendment of the awards was justifiable and does not constitute manifest error. First, reasonable factual bases exist for the findings of the trial court. Second, the evidence adduced at trial establishes that the jury's verdicts were clearly wrong, as they were contrary to the evidence presented, and they failed to award damages for proven injuries, thereby requiring the trial judge to award the additional damages. Therefore, this assignment of error lacks merit.

ASSIGNMENT OF ERROR NUMBER 6
In this assignment of error, the defendants claim it was error for the trial court to tax them with all court costs. For the following reasons, we find this assignment of error lacks merit.
La.Code Civ.P. art.1920 provides:
Unless the judgment provides otherwise, costs shall be paid by the party cast, and may be taxed by a rule to show cause.
Except as otherwise provided by law, the court may render judgment for costs, or any part thereof, against any party, as it may consider equitable.
First, it is clear from the pleadings that the defendants requested a jury trial in this matter, which substantially raised the cost of litigation. The plaintiffs did not request a jury trial, nor did they call unnecessary expert witnesses or otherwise unnecessarily contribute to court costs. Second, having already determined that the trial judge did not err in assessing 100 per cent liability to Citizen, it was certainly within the trial judge's vast discretion in these matters to assess 100 per cent of the costs against the defendants. Accordingly, we find this assignment of error is meritless.

ASSIGNMENT OF ERROR NUMBER7
In this assignment, the defendants claim that their right to due process was violated because they were not permitted to properly present their defense and that La.R.S. 32:295.1(E) is unconstitutional. For the following reasons, we find this assignment of error, likewise, lacks merit.
Regarding the defendants' right or, lack of right, to present the plaintiffs' failure to wear seat belts as a means of minimizing their liability, La.R.S. 32:295.1, reads, in pertinent part:
E. In any action to recover damages arising out of the ownership, common maintenance, or operation of a motor vehicle, failure to wear a safety belt in violation of this Section shall not be considered evidence of comparative negligence. Failure to wear a safety belt in violation of this Section shall not be admitted to mitigate damages.

(Emphasis added). This statute can be found in Title 32 of the Revised Statutes and is entitled "Motor Vehicles and Traffic Regulation" under the subsection entitled Part IV. "Traffic Regulations." This statute was written for the sole purpose of providing this state with a seat-belt law. Reading the statute in its entirety, section E is direct evidence that the legislature did not intend for this statute to be used for any other purpose, including tort liability. The reasoning is clear: A driver who is clearly at fault for causing an accident should not have his liability reduced because the unsuspecting victim was not wearing his seat belt. Put another way, a victim should not be required to shoulder expenses resulting from an accident in which he was clearly not at fault. As the defendants' brief correctly states, the purpose *587 of the statute is to encourage drivers to wear seat belts for their own safety. However, that purpose does not stand for the proposition that the statute was created to protect against a careless driver's liability for his actions. As the plaintiffs correctly state in their brief, "the evidentiary limitation is designed to protect parties from an unfair trial argument" and undue prejudice. In Miller, 635 So.2d at 610, this Court stated:
Because the failure to wear seat belts is inadmissible to prove failure to mitigate damages or comparative negligence, no genuine issue of material fact is raised, with respect to the liability of the parties in this suit....
Therefore, the trial judge was correct in prohibiting defendants from raising the seat belt issue.
Regarding the "unconstitutionality" of La.R.S. 32:295.1 as raised by the defendants, this court is precluded from addressing that issue, as the defendants failed to follow proper procedure. In Summerell v. Phillips, 258 La. 587, 247 So.2d 542, 546 (1971) (citations omitted), the supreme court held that: "[I]t is ... well accepted that a litigant who fails to plead the unconstitutionality of a statute cannot legally raise the constitutional issue in the appellate court." In the context of civil cases, there are a few exceptions to the above rule. For example, the constitutionality of a statute can be raised for the first time on appeal when: (1) The statute has been declared unconstitutional in another case; or (2) the appeal is filed prior to the effective date of the statute. See Harris v. Monroe Bldg. & Loan Assn., 185 La. 289, 169 So. 343 (1936); Long v. Northeast Soil Conservation Dist. of La., 226 La. 824, 77 So.2d 408 (1955). However, none of the exceptions to the well settled rule are applicable to the case sub judice. Accordingly, we decline to proceed further.

CONCLUSION
The trial court's judgment, granting the plaintiffs' motion for JNOV and altering the damages awards, is affirmed. Pursuant to La.Code Civ.P. art. 2164, costs of this appeal are taxed against defendants.
AFFIRMED.